## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IMAGINEAR, INC.**, **et al.**, | |
| *Plaintiffs*, | |
| v. | **Case No. 1:24-cv-01252-JDW** |
| **NIANTIC, INC. d/b/a NIANTIC LABS,** | |
| *Defendant.* | |

## <u>MEMORANDUM</u>

It's *Avada Kedavra* for three of ImagineAR, Inc. and Imagine AR, Inc.'s ("IAR")
patents because all of them are abstract and lack an inventive concept. And it's also game
over for IAR's claims of pre-suit indirect and willful infringement for the remaining patents
at issue in this case because IAR has not alleged facts that make it plausible that Niantic,
Inc. had the requisite knowledge of alleged infringement. Thus, I will grant Niantic's partial
motion to dismiss.

## I.     BACKGROUND

Plaintiffs ImagineAR, Inc. and Imagine AR, Inc. (together "IAR") are the respective
owner and licensee of various patents including U.S. Patent Nos.: (1) 8,777,746, entitled
"Gestures To Encapsulate Intent" (the "'746 Patent"); (2) 8,668,592, entitled "Systems And
Methods Of Changing Storyline Based On Player Location" (the "'592 Patent"); (3)
8,579,710, entitled "Systems And Methods Of Virtual Goods Trading Using Ratings To

Ascribe Value To Virtual Goods" (the "'710 patent"); (4) 10,946,284, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'284 patent"); (5) 11,484,797, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'797 patent"); (6) 11,666,827, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'827 patent"); and (7) 12,070,691, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'691 patent") (together the "Patents-In-Suit"). On November 13, 2024, IAR filed suit against Defendant Niantic, Inc., claiming that Niantic infringes one or more claims of the Patents-In-Suit by making, using, selling, offering for sale in the United States, and/or importing into the United States, video games including Pokémon GO, Pikmin Bloom, Peridot, Skatrix, Monster Hunter Now, and Harry Potter: Wizards Unite. IAR asserts claims against Niantic for direct infringement, indirect infringement (including both induced and contributory infringement), and willful infringement.

Niantic moved to dismiss. However, I granted IAR's Unopposed Cross-Motion To Amend And Supplement Complaint so that it could supplement its allegations regarding its claims for indirect and willful Infringement. IAR's operative pleading, its First Amended Complaint (the "FAC"), asserts the same infringement theories as to the same Patents-In-Suit. Niantic has filed a partial motion to dismiss the FAC, seeking dismissal of: (1) IAR's infringement claims for the '710, '746, and '592, as invalid under 35 U.S.C. § 101,

and (2) IAR's pre-suit indirect and pre-suit willful infringement claims.[1] IAR opposes the motion, and it is ripe for review.

## II.    LEGAL STANDARD[2]

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "[r]ules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 786–87 (same). First, the court must identify the elements needed to set forth a particular claim. *See id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most

---

[1]    Niantic's motion to dismiss the claims for indirect and willful infringement claims is confined to pre-suit conduct—*i.e.* conduct that occurred before IAR filed suit on November 13, 2024.

[2]    Applicable regional circuit law governs the standard for motions to dismiss. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1288 (Fed. Cir. 2024).

favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted).

**III.    ANALYSIS**

**A.    Patent Eligibility**

An invention is patent eligible if it claims a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. "The Supreme Court has interpreted this language to exclude '[l]aws of nature, natural phenomena, and abstract ideas' from patent eligibility." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1211 (Fed. Cir. 2025) (quotation omitted). Following the Supreme Court's decision in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), "courts perform a two-step analysis to determine patent eligibility under § 101." *Recentive*, 134 F.4th at 1211. First, the court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* (quotation omitted). If so, the second step requires the court to "assess the 'elements of each claim both individually and as an ordered combination' to determine whether they possess an 'inventive concept' that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (same).

Patent validity under Section 101 is a question of law that can be resolved on a motion to dismiss. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023). Patents are presumptively valid, and "[t]he burden to prove the ineligibility of

4

any patent claim stays with the patent challenger at all times." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1291 (Fed. Cir. 2024).

**1.     '710 Patent**

Claim 15 of the '710 Patent claims:

A computer-implemented system for trading virtual goods on at least one computing device in communication with a storage medium, comprising:

a game engine programmed for:

> providing a game environment accessible by a plurality of players, including a facility enabling a first player to acquire or develop a virtual good, the virtual good having a starting value;

> receiving, via the game environment at least one rating of the virtual good from a second player;

> automatically increasing or decreasing the starting value as a function of the at least one rating of the virtual good;

> making the virtual good available for purchase at a new value representing the automatically increased or decreased starting value; and

> receiving a request from a requesting player to purchase the virtual good, and checking whether the requesting player previously rated the virtual good prior to allowing a sale of the virtual good to the requesting player;

the storage medium in communication with the game engine for:

> storing the starting value, the at least one rating and the new value.

(D.I. 21-3 at 13:8 – 14:4.)

### a.  *Alice* step one: abstract idea

At step one under *Alice*, I must consider "what the patent asserts to be the focus of the claimed advance over the prior art" by "focus[ing] on the language of the [a]sserted [c]laims themselves, considered in light of the specification." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (quotation omitted). In the context of software and other computer-related patents, the question is "whether the claims focus on 'the specific asserted improvement in computer capabilities ... or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Recentive*, 134 F.4th at 1212 (quotation omitted). The alleged improvement must be directed to functionality; "[a]n improved result, without more, is not enough to support patent eligibility at *Alice* step one." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (citation omitted).

Courts must "tread carefully" when it comes to determining whether a patent claims an abstract idea. *Alice*, 573 U.S. at 217. To that end, courts are wary of "describing the claims at such a high level of abstraction and untethered from the language of the claims" such that the exceptions to Section 101 would swallow the rule. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The specification's claimed advance over the prior art is "the ability to take other factors into account"—other than the seller's own valuation—"for ascribing value to virtual goods" in the context of "virtual goods trading." (D.I. 21-3 at 1:39-43.) And the language of Claim 15 also focuses on setting a

6

value for virtual goods to be sold in a game environment. Thus, Claim 15's focus is valuing virtual goods for trading. Niantic has oversimplified Claim 15 by describing its focus as "receiving and processing data to manage trades" of virtual goods. (D.I. 34 at 7.) However, because Niantic's oversimplification of the claim's focus does not impact the overall analysis, I will address the merits of its arguments rather than deny the motion on that basis alone.

Like "risk hedging," "intermediated settlement," and "placing an order based on displayed market information,[]" valuing goods for trading "is 'a fundamental economic practice long prevalent in our system of commerce.'" *Alice*, 573 U.S. at 219 (quoting *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019). And "verifying a transaction to avoid fraud ... is [another] long-standing commercial practice." *Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 979 (Fed. Cir. 2020). The same is true with rating products, and at least one other judge has concluded that claims directed to the processing of sales data "by calculating a performance rating" and utilizing that rating "to adjust price" were abstract. *Surgetech, LLC v. Uber Techs. Inc.*, 700 F. Supp.3d 179, 184 (D. Del. 2023), *aff'd*, No. 2024-1280, 2025 WL 1621648 (Fed. Cir. June 9, 2025). The Federal Circuit has "repeatedly found claims directed to similar concepts, and containing similar steps, to be abstract." *In re Zimmerman*, No. 2023-cv-1542, 2024 WL 503743, at *2 (Fed. Cir. Feb. 9, 2024). Thus, I have

little trouble concluding that Claim 15 is abstract because it is directed to a fundamental economic practice.

IAR's arguments don't persuade me otherwise. *First*, the fact that "Claim 15 defines concrete system components for virtual gaming" does not make it any less abstract. (D.I. 35 at 6.) Indeed, "asserted claims can be directed to an abstract idea even if the claims require generic computer components …." *Trinity*, 72 F.4th at 1364. That is true here. The components to which IAR points—"at least one computing device," "a storage medium," and "a game engine"—are "generic computing terms … that provide a generic technical environment for performing the abstract idea" of valuing virtual goods in the game environment based on players' ratings of those goods. *Trinity*, 72 F.4th at 1364.

*Second*, while IAR contends that Claim 15 improves the relevant technology, the claim is not directed to improvements to a computer's functionality. Instead, Claim 15's focus "is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Claim 15 is directed to problems with valuing and trading virtual goods, not computers. That is one of the reasons that Claim 15 is different from the patent eligible claim in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). In that case, the specific rules in the claim's limitations were directed to a technological improvement because they "allow[ed] **computers to produce** 'accurate and realistic lip synchronization and facial expressions in animated characters' that

8

previously could only be produced by human animators." *McRO*, 837 F.3d at 1313 (emphasis added).

In this case, on the other hand, Claim 15 does not include any similarly specific rules that lead to an improvement in computer functionality. Instead, the alleged "rule" ("automatically increasing or decreasing the starting value as a function of the at least one rating of the virtual good") is directed at an improvement in the abstract idea itself (how to value virtual goods) and uses generic computer components to adjust a virtual good's value based on ratings. (D.I. 21-3 at 13:18-20.) And Claim 15's remaining limitations are just "functional steps" directed to the same abstract idea. *Wireless Discovery LLC v. eHarmony, Inc.*, 654 F. Supp. 3d 360, 374 (D. Del. 2023), *aff'd*, No. 2023-1582, 2024 WL 3336763 (Fed. Cir. July 9, 2024). Thus, Claim 15 is a far cry from the specific rules and algorithms that were patent-eligible in *McRO*.

### b.    *Alice* step two: inventive concept

Having determined that Claim 15 is directed to an abstract idea, I turn to the second step of the *Alice* inquiry, which requires me to "consider the elements of the claims to determine whether they transform the nature of the claim into a patent-eligible application of the abstract idea." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017) (citation omitted). "This is the search for an inventive concept, which is something sufficient to ensure that the claim amounts to significantly more than

the abstract idea itself." *Id.* (same). For the claim to survive, "an inventive concept must be evident ...." *Id.* (quotation omitted). In this case, it's not.

In computer-implemented inventions like the '710 Patent, "the computer must perform more than 'well-understood, routine, conventional activities previously known to the industry.'" *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021) (same). But Claim 15's "checking" limitation prior to allowing a sale is routine. For example, both brick-and-mortar and online merchants check purchasers' identification before selling certain products, like nicotine and alcohol. Firearms dealers also check multiple sources of information before permitting a sale, and online betting platforms check users' ages and locations before permitting certain wagers. Even more on point, some brokerages will check a customer's account to confirm that a particular trade does not put that customer at risk of a margin call. And many stores will check a customer's purchase and return history to confirm that the customer's history does not indicate that the customer will likely return the product. Thus, Claim 15's "computer-mediated implementation of routine or conventional activity is not enough to provide an inventive concept." *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 139 F.4th 1332, 1339 (Fed. Cir. 2025).

Even if Claim 15 prevents fraud and collusion in trading virtual goods in video games (which is not clear to me), Claim 15 is different than the inventive claim in *DDR*, where "the claimed solution [was] necessarily rooted in computer technology in order to

overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Here, on the other hand, fraudulent transactions and price manipulation are not unique to computer networks or video games. And the fact that the "checking" occurs in the context of a game environment is not enough to render it inventive. *See United Servs.*, 139 F.4th at 1338. And finally, the "mere automation" of the "checking" step and the changes in price "does not constitute a patentable improvement in computer technology." *Trading Techs.*, 921 F.3d at 1384 (quotation omitted). In short, Claim 15 is not inventive because it does not amount to significantly more than the abstract idea itself.

### c.    Representativeness

Having determined that Claim 15 is invalid under Section 101, the next question is whether it is representative of the remaining claims of the '710 Patent. A district court may "limit[] the analysis of a § 101 challenge to representative claims … when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity*, 110 F.4th at 1290 (quotation omitted). Niantic bears the initial burden to make that *prima facie* showing. *See id.* If Niantic makes the requisite showing, then the burden shifts to IAR "to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.*

Niantic has made a *prima facie* showing that Claim 15 of the '710 Patent is representative of the remaining claims in the patent.[3] Indeed, all of the claims in the '710 Patent are linked to the overall concept of valuing virtual goods for trading. The method claims (Claims 1 – 14) fail to provide any distinctive significance from the systems claims (Claims 15 – 24), and the language of the two independent claims—Claims 1 and 15—is substantially similar. And while "[a] claim is not representative simply because it is an independent claim[,]" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018), the limitations in claims 16 – 24 do not alter the concept of Claim 15.

ImagineAR's arguments in response are either frivolous or not persuasive. As an initial matter, it is not sufficient for IAR to state in a conclusory fashion that "claim construction and discovery remain." (D.I. 35 at 9.) Instead, to avoid dismissal on this basis, IAR "must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity*, 72 F.4th at 1360-61. It hasn't done that.

---

[3]    I am not convinced that IAR's use of certain claims as exemplars in the FAC for infringement purposes is compelling evidence of representativeness in this instance because "[a] statement that a claim is representative for purposes of infringement— without more—is insufficient to show that a claim is representative for purposes of invalidity under 35 U.S.C. § 101." *GREE, Inc. v. Supercell Oy*, No. 19-cv-161, 2020 WL 475443, at *3 (E.D. Tex. Jan. 29, 2020).

In addition, the fact that the "PTO has already found Claims 1-14 to be directed to eligible subject matter" has nothing to do with whether Claim 15 is representative of those claims. (D.I. 35 at 9.) And I am "not required to defer to Patent Office determinations as to eligibility" in any event. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023). As for the claims that include "physical system components" (D.I. 35 at 9), those limitations are just generic computer components and their conventional operations, which do not change the overall concept articulated in Claim 15. And, for similar reasons set forth above, the alleged "rules" in Claims 20 – 24 are not specific enough to constitute an improvement to computer functionality. Thus, I will treat Claim 15 as representative of the remaining claims in the '710 Patent.

### 2.    '746 Patent

Claim 1 of the '746 Patent claims:

A method of enabling gameplay with a character in a game environment on a mobile device, comprising:

providing a game environment in which a player can play a game via a character;

when there is an expectation of action from the character in the game, receiving a touch gesture input on the mobile device;

calculating fidelity of the touch gesture input to an optimal gesture in a reference gesture table; and

if the fidelity is within a predefined range associated with the optimal gesture, matching the touch gesture input to the optimal gesture and calling an associated game script wherein the character would be shown as having successfully completed the expectation.

13

(D.I. 21-1 at 12:57 – 13:3.)

### a.    *Alice* step one: abstract idea

The focus of Claim 1 of the '746 Patent is using a touch screen in a game environment. The language of the claim focuses on evaluating a player's gestures on a touch screen in the context of a game environment. While the specification identifies the advance over prior art as the fact that "many (similar or different) actions may result from a set of inputs for any given context[,]" (D.I. 21-1 at 8:58-60), Claim 1 does not claim that. Rather, that alleged innovation may be the focus of some of the dependent claims.

Using a touch screen in a game environment is an abstract idea. The functional language of Claim 1 makes clear that the claim is directed to "a result or effect"— matching a touch gesture input an optimal gesture and calling an associated game script—rather than "a specific means or method that improves the relevant technology." *Contour*, 113 F.4th at 1379 (quotation omitted). The claim describes calculating the fidelity of a player's touch gesture on a mobile device and then matching it to an optimal gesture in a reference gesture table if it falls within a predefined range associated with the optimal gesture. But there is no explanation "*how* to accomplish these steps, at a technical level[.] *Thunder Power New Energy Vehicle Dev. Co. Ltd. v. Byton N. Am. Corp.*, 340 F. Supp.3d 922, 929 (N.D. Cal. 2018), *aff'd*, 777 F. App'x 517 (Fed. Cir. 2019) (original emphasis). "At that level of generality, the claim[] do[es] no more than describe a desired function or outcome ...." *Id.* (quotation omitted). In short, Claim 1 lacks "the specificity required to

14

transform a claim from one claiming only a result to one claiming a way of achieving it." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018) (same). Therefore, it is abstract, and IAR's contrary arguments are unavailing.

Again, the process set forth in Claim 1 reflects "a much more generic set of steps than *McRO's* specific claim language." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023). For example, Claim 1 does not describe—at all—how to evaluate the fidelity of a touch gesture. And even if it's true that "Claim 1 recites a new method of evaluating touch screen inputs differently than the prior art" (D.I. 35 at 12)—which is not clear—that fact does not make it any less abstract. "[A] claim for a new abstract idea is still an abstract idea." *Mobile Acuity*, 110 F.4th at 1294 (quotation omitted). Thus, this claim fails at step one.

### b.    *Alice* step two: inventive concept

An "[t]he abstract idea itself cannot supply the inventive concept, 'no matter how groundbreaking the advance.'" *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019). The Federal Circuit has also made clear that "'improving a user's experience while using a computer application is not, without more, sufficient to render the claims' patent-eligible at step one." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (quotation omitted). These principles demonstrate that IAR cannot prevail at the second step of the *Alice* inquiry. It contends that Claim 1 "provides a richer and more unique gaming experience than known methods of touch

gesture evaluation." (D.I. 35 at 13.) But that's just a repackaged version of the same argument that fails at step one. Like the plaintiff in *Mobile Acuity*, IAR's "suggesti[on] that its alleged 'inventive concept' is not found in the prior art" is irrelevant to the *Alice* inquiry. *Mobile Acuity*, 110 F.4th at 1294. Indeed, "[t]he search for a § 101 inventive concept is ... distinct from demonstrating § 102 novelty." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). Thus, "even if [C]laim 1 recites novel subject matter, that fact is insufficient by itself to confer eligibility." *Yu*, 1 F.4th at 1045. Absent something significantly more than the abstract idea itself, Claim 1 is not inventive.

### c.    Representativeness

Niantic has made a *prima facie* showing that Claim 1 is representative of the remaining claims in the '746 Patent. The '746 Patent's dependent claims recite slight variations on the same abstract idea that do not change the primary focus of the claims— using a touchscreen in a game environment.

Again, IAR's arguments miss the mark. IAR has not explained why claim construction or discovery are necessary to understand the scope of the remaining for purposes of a Section 101 analysis. *See Trinity*, 72 F.4th at 1360-61. And the technical limitations that IAR identifies do not render other claims non-abstract or inventive. Instead, they are all variations on the same theme. Like Claim 1, the language of the dependent claims' limitations is results-oriented and does not identify specific steps for improving the mobile device's functionality, and the mobile device is just a tool. And

again, whether the limitations "refine the claimed method's novel approach to evaluating touch gesture inputs on a touch screen" is irrelevant to determining whether the claims include an inventive concept. (D.I. 35 at 14.) Thus, IAR falls short of its burden to demonstrate that I should not treat Claim 1's patent eligibility as decisive of the eligibility of the remaining claims of the '746 Patent.

### 3.    '592 Patent

Claim 1 of the '592 Patent claims:

A method of enabling virtual gameplay on a computing device in communication with a storage medium, the method comprising the steps of:

providing a video game environment on the computing device, enabling a first player to play a game via a character, the first player being one of a plurality of players which have access to the video game environment, each player having a geographic location;

detecting, via an input device in communication with the computing device, the first player's geographic location, and storing the player's geographic location on the storage medium; and

in response to the detected geographic location, retrieving, via the computing device, a storyline for the first player's character to interact with, the retrieved storyline being related to the geographic location of the first player; and permitting the other players' characters to interact with the retrieved storyline as long as the first player remains connected to the game;

wherein other storylines are opened and closed to the first player's character as other players enter and leave the game.

(D.I. 21-2 at 13:60 – 14:14.)

### a. *Alice* step one: abstract idea

Claim 1 of the '510 Patent focuses on tailoring content based on a player's location. The language of the claim focuses on providing storylines in a game environment based on, and related to, a player's geographic location. And the specification explains that unlike the static or predictable virtual worlds in prior art, the '510 Patent offers "a richer and more unique gameplay experience for each player" by taking a player's geographic location into account. (D.I. 21-2 at 1:42-43.) Thus, Niantic's characterization is apt.

"Whether particular claim limitations are abstract … must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed. Cir. 2021). However, "prior cases can be helpful in analyzing eligibility," and the Federal Circuit's decision in *Intell. Ventures I LLC v. Cap. One Bank*, 792 F.3d 1363 (Fed. Cir. 2015) is instructive. In that case, the Court recognized that tailoring content based on a user's location or address … "is 'a fundamental … practice long prevalent in our system'" and concluded that providing tailored content "based upon the location of the individual—is an abstract idea." *Id.* at 1369. Because that is what Claim 1 describes, I have little trouble concluding that it is also directed to an abstract idea.

Tellingly, in its response, IAR does not grapple with *Intell. Ventures* or any of the "several precedents in which [the Federal Circuit has] concluded that broadly analogous claims, such as those involving methods of providing particularized information to

individuals based on their locations, to be abstract." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024). Instead, IAR argues that Claim 1 is not abstract because it "recites a new method for ... enabling a virtual game world that is accessible by multiple players at the same time" based on players' locations. (D.I. 35 at 16.) But whether Claim 1 describes a "new" method does not tell me anything about whether it is abstract. Again, "[e]ligibility and novelty are separate inquiries." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (citation omitted). And, in any event, Claim 1 doesn't describe specific steps for *how* to perform the method. Instead, it sets forth generic actions—by generic "computing devices"—of detecting players' locations, storing that information, and retrieving a related storyline. In other words, it does not set forth an improvement to how a computer functions. And an alleged "improved result, without more, is not enough to support patent eligibility at Alice step one." *Contour*, 113 F.4th at 1379 (citation omitted). Thus, Claim 1 is abstract.

### b.   *Alice* step two: inventive concept

There is no inventive concept that transforms Claim 1 from an abstract idea. Again, IAR conflates eligibility and novelty, arguing that "Claim 1 contains an inventive concept because it expressly identifies how the claimed methods achieve a technological improvement over existing virtual games known in the art." (D.I. 35 at 16.) "[T]hat contention is unavailing at step two, as "a claim for a new abstract idea is still an abstract idea." *Mobile Acuity*, 110 F.4th at 1294 (quotation omitted). Instead, Claim 1 recites

generic computing devices that perform routine and conventional functions: detecting a player's location, storing that information, retrieving related content, and updating content for players based on that information. Thus, Claim 1 is not inventive.

### c.      Representativeness

Niantic has made a *prima facie* showing as to representativeness. Dependent claims 3-16 describe additional tailoring based on a player's location, and claims 17-25 describe how generic components will perform the claimed method. Thus, the claims are substantially similar, and they all link to the same abstract idea of tailoring video game content based on a player's location.

IAR has not satisfied its burden to demonstrate why the eligibility of Claim 1 should not be treated as representative of the remaining claims. Instead, it just argues again that the parties have yet to engage in claim construction and discovery. That is insufficient, and IAR's substantive argument fares no better. "[A]n inventive concept must be evident in the claims." *Secured Mail*, 873 F.3d at 911 (quotation omitted). It is not evident to me that the dependent claims contain an inventive concept, and IAR hasn't bothered to explain what the alleged inventive concepts are. Instead, it makes a conclusory assertion that "the dependent claims recite additional inventive concepts tied to certain attributes of the virtual word, the players, and the players' geographic locations." (D.I. 35 at 17.) That doesn't tell me anything. In short, IAR has "not presented any meaningful argument for

20

the distinctive significance of any claim limitations not found" in Claim 1. *Berkheimer*, 881

F.3d at 1365. Thus, I will treat Claim 1 as representative for Section 101 purposes.

### B.    Pleading Sufficiency[4]

"Claims for induced, contributory and willful infringement all require that the

defendant had knowledge of the asserted patents and knowledge that the acts at issue

constituted patent infringement." *NEC Corp. v. Peloton Interactive, Inc.*, No. 22-cv-987,

2023 WL 8529287, at *2 (D. Del. Dec. 8, 2023). To state a plausible claim of induced

infringement, a plaintiff must allege facts "that the accused infringer specifically intended

[another party] to infringe [the patent] and knew that the [other party's] acts constituted

infringement." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024) (quotation

omitted). "To state a claim for contributory infringement, a complaint must adequately

allege: '(1) the defendant had 'knowledge of the patent in suit,' (2) the defendant had

'knowledge of patent infringement,' and (3) the accused product is not a staple article or

commodity of commerce suitable for a substantial non-infringing use." *Id.* at 47 (same).

And finally, "[t]o sufficiently plead willful infringement, a patentee must allege facts

plausibly showing that, as of the time of the claim's filing, the accused infringer: (1) knew

of the patents-in-suit, (2) infringed the patents after acquiring that knowledge, and (3)

knew, or should have known, that its conduct in doing so amounted to infringement of

---

[4]    Because I have determined that the '710, '746, and '592 Patents are invalid, I am
dismissing IAR's claims on that basis and need not consider whether the FAC's factual
allegations state claims for indirect or willful infringement as to those patents.

the patents." *Hills Point Indus. LLC v. Just Fur Love LLC*, No. 22-cv-1256, 2023 WL 8804046, at *2 (D. Del. Dec. 20, 2023).

IAR has not alleged facts that make it plausible that Niantic had knowledge of alleged infringement of the '284, '797, '827, and '691 Patents. At most, the FAC includes factual allegations that make it plausible that Niantic had pre-suit knowledge of the '284 Patent. In 2021, Niantic entered into a joint venture with Nintendo "to develop mobile augmented reality and virtual space software products and services, including but not limited to the infringing Pokémon GO and Pikmin Bloom products and services." (D.I. 21 at ¶ 58.) Then, in December of 2021, Nintendo cited the '284 Patent during prosecution of its own patent, and the FAC alleges that pursuant to the joint venture, Niantic and Nintendo "shared their knowledge of mobile augmented reality and virtual space ... patent applications, patents, and cited prior art." (D.I. 21 at ¶ 58.) Accepting these factual allegations as true, it is plausible that Nintendo shared its knowledge of the '284 Patent with Niantic.

However, no well-pled facts would permit an inference that Niantic had knowledge of the alleged infringement. Instead, the FAC recites boilerplate allegations that Niantic "has had knowledge of ... its infringement of the '284 patent, others' infringement of the '284 patent, and exemplary infringing software products and services (and components thereof)." (*Id.*) These conclusory allegations are insufficient to state a claim for indirect or willful infringement of the '284 Patent.

As for the '797, '827, and '691 Patents, there are no similar allegations that Nintendo was aware of them, and it is far too speculative to suggest that Nintendo must have known about them just because they are continuations of the '284 Patent. *See, e.g.*, *Jackson v. Seaspine Holdings Corp.*, No. 20-cv-1784, 2022 WL 610703, at *5 (D. Del. Feb. 14, 2022) (citing *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233 (D. Del. 2012)). Thus, it is not plausible that Niantic learned about the '797, '827, or '691 Patents during its joint venture with Nintendo. As such, "[t]hese allegations are insufficient to support an inference of actual knowledge of the patents, let alone knowledge of infringement." *Id.* This dooms IAR's pre-suit claims for indirect and willful infringement of these patents.

## IV.    CONCLUSION

The '710, '746, and '592 Patents are each invalid because they are abstract and non-inventive. I will also dismiss IAR's pre-suit claims for indirect and willful infringement, as the FAC does not include sufficient factual allegations of Niantic's pre-suit knowledge of the remaining patents and their alleged infringement. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 8, 2025