**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **IMAGINEAR, INC.**, **et al.,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**NIANTIC, INC. d/b/a NIANTIC LABS,**<br><br>*Defendant.* | **Case No. 1:24-cv-01252-JDW** |

<u>**MEMORANDUM**</u>

Prepare for trouble, make it double. For a second time, Niantic, Inc. has demonstrated that ImagineAR, Inc. and Imagine AR, Inc.'s patents are invalid under 35 U.S.C. §101. Thus, I will grant Niantic's motion for judgment on the pleadings.

## I.   BACKGROUND

ImagineAR, Inc. and Imagine AR, Inc. (together "IAR") are the respective owner and licensee of various patents, including U.S. Patent Nos. 10,946,284, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'284 Patent"); 11,484,797, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'797 Patent"); 11,666,827, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'827 Patent"); and 12,070,691, entitled "Systems And Methods For Capture And Use Of Local Elements In Gameplay" (the "'691

Patent") (together the "Patents-In-Suit"). Relevant here, Claim 1 of the '284 Patent ("Claim

1") claims:

> A computer-implemented method of enabling virtual gameplay on a computing device in communication with a storage means and a location sensor, the method comprising the steps of:
>
>> providing access to a video game having a virtual character with a virtual character statistic in which a player in a real world player geographic location interacts with the video game and with other players in other real world player geographic locations playing other virtual characters;
>>
>> detecting with the location sensor the real world player geographic location of the player and storing the real world player geographic location in the storage means;
>>
>> creating in a database a local element script associated with the real world player geographic location, the local element script actuatable in the video game to modify one or more of the virtual character statistic and a plot node; and
>>
>> retrieving from the database mapping information related to the real world player geographic location of the player and actuating the corresponding local element script in the video game while the player is interacting with the video game and the player's real world player geographic location is not represented by another player and not actuating the corresponding local element script when the player's real world player geographic location is represented by another player,
>>
>> wherein actuating the local element script comprises modifying the virtual character statistic of the player's virtual character and modifying one or more of a virtual character statistic and a plot node of at least one of the other players' virtual characters.

(D.I. 21-4 at 16:10-42.)

On November 13, 2024, IAR filed suit against Niantic, Inc., claiming that Niantic infringes one or more claims of the Patents-In-Suit by making, using, selling, offering for sale in the United States, and/or importing into the United States, video games including Pokémon GO, Pikmin Bloom, Peridot, Skatrix, Monster Hunter Now, and Harry Potter: Wizards Unite. In its First Amended Complaint ("FAC"), IAR asserts claims against Niantic for direct infringement, indirect infringement (including both induced and contributory infringement), and willful infringement.

On September 8, 2025, I granted Niantic's Motion To Dismiss and dismissed IAR's claims for **pre-suit** indirect and willful infringement of the Patents-In-Suit. As part of that motion, I also determined that three other IAR patents were invalid under 35 U.S.C. § 101, including U.S. Patent No. 8,668,592 (the "'592 Patent"). After Niantic answered the FAC, both Parties moved to amend their respective pleadings. Niantic moved to file an amended answer to supplement its inequitable conduct defense, and IAR moved to file a Second Amended Complaint to allege Niantic's infringement of two additional patents and to include additional information about Niantic's pre-suit knowledge of the Patents-In-Suit. Both motions remain pending. Niantic has also moved for judgment on the pleadings, asserting that the Patents-In-Suit are invalid under 35 U.S.C. § 101. IAR opposes the motion, and it is ripe for review.

## II.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quotation omitted).[1] Accordingly, "the court must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,' and may not grant the motion 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Id.* (same).

## III.    ANALYSIS

### A.    Representativeness

A district court may "limit[] the analysis of a § 101 challenge to representative claims ... when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quotation omitted). Niantic bears the initial burden to make that *prima facie* showing. *See id.* If Niantic makes the requisite showing, then the burden shifts to IAR "to present

---

[1]    Regional circuit law governs the standard for motions for judgment on the pleadings. *See CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1095 (Fed. Cir. 2021).

non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.*

Niantic has made a *prima facie* showing that Claim 1 of the '284 Patent is representative of the remaining claims in that patent and the claims in the other Patents-In-Suit. All of the patents at issue are directed to using a player's location to tailor content in the virtual world of a game. Also, all four patents share a common specification, which "is some additional indication of representativeness[.]" *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1035 (E.D. Tex. 2019). Indeed, IAR "agree[s] that claim 1 of the '284 patent may be treated as representative of the independent claims of the Patents[.]" (D.I. 125 at 2 n.2.)

IAR's contention that Claim 1 is not representative of any of the dependent claims is not persuasive. Certainly, Claim 1 is not representative "simply because it is an independent claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). However, IAR's conclusory assertion (in a footnote) that "the dependent claims of the Patents add more than 'trivial limitations'" (D.I. 125 at 2 n.2), is not a "meaningful argument for the distinctive significance of any claim limitations not found" in Claim 1. *Berkheimer*, 881 F.3d at 1365 (citation omitted). In addition, IAR was on notice, through my Policies And Procedures, that I do not consider substantive arguments that Parties make in footnotes. Thus, because Niantic has made a showing that Claim 1 is representative of all the claims

of the Patents-In-Suit for Section 101 purposes, and IAR has not made a colorable showing to the contrary, I will treat Claim 1 as representative.

### B.      Patent Eligibility

An invention is patent eligible if it claims a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. "The Supreme Court has interpreted this language to exclude '[l]aws of nature, natural phenomena, and abstract ideas' from patent eligibility." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1211 (Fed. Cir. 2025) (quotation omitted). Following the Supreme Court's decision in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), "courts perform a two-step analysis to determine patent eligibility under § 101." *Recentive*, 134 F.4th at 1211. First, the court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* (quotation omitted). If so, the second step requires the court to "assess the 'elements of each claim both individually and as an ordered combination' to determine whether they possess an 'inventive concept' that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (same).

Patent validity under Section 101 is a question of law that can be resolved on a motion to dismiss. *Callwave Commc'ns, LLC v. AT & T Mobility*, 207 F. Supp. 3d 405, 410 (D. Del. 2016). Patents are presumptively valid, and "[t]he burden to prove the ineligibility

of any patent claim stays with the patent challenger at all times." *Mobile Acuity*, 110 F.4th at 1291.

### 1. *Alice* **step one: abstract idea**

At step one under *Alice*, I must consider "what the patent asserts to be the focus of the claimed advance over the prior art" by "focus[ing] on the language of the [a]sserted [c]laims themselves, considered in light of the specification." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (quotation omitted). In the context of software and other computer-related patents, the question is "whether the claims focus on 'the specific asserted improvement in computer capabilities ... or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Recentive*, 134 F.4th at 1212 (quotation omitted). The alleged improvement must be directed to functionality; "[a]n improved result, without more, is not enough to support patent eligibility at *Alice* step one." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (citation omitted). Courts must "tread carefully" when it comes to determining whether a patent claims an abstract idea. *Alice*, 573 U.S. at 217. To that end, courts are wary of "describing the claims at such a high level of abstraction and untethered from the language of the claims" such that the exceptions to Section 101 would swallow the rule. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

Claim 1 focuses on tailoring content based on a player's location. The claimed advance over the prior art is "the ability to take the player's location and its various local

7

elements into account for meaningful impact on gameplay." (D.I. 21-4 at 1:43-45.) According to the specification, prior art virtual worlds utilized storylines that were "either static or branch[ed] in a rather predictable fashion" and were "dependent on the virtual character" that players chose to engage in the virtual world. (*Id.* at 1:32-33, 40.) By accounting for a player's geographic location and incorporating local elements, the invention "allows for a richer and more unique gameplay experience for each player." (*Id.* at 1:46-47.) The language of Claim 1 also focuses on incorporating a player's geographic location into the virtual world during gameplay. Thus, Niantic's characterization of Claim 1 of the '284 Patent as tailoring content based on a player's location is apt.

"Whether particular claim limitations are abstract … must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." *CosmoKey*, 15 F.4th at 1099. However, "prior cases can be helpful in analyzing eligibility," *id.*, and that is true here. In my prior decision invalidating the '592 Patent, I relied on the Federal Circuit's decision in *Intell. Ventures I LLC v. Cap. One Bank*, 792 F.3d 1363 (Fed. Cir. 2015) to conclude that "providing tailored content 'based upon the location of the individual—is an abstract idea.'" *ImagineAR, Inc. v. Niantic, Inc.*, No. 24-cv-1252, 2025 WL 2592261, at *7 (D. Del. Sept. 8, 2025) (quotation omitted). I do not see any reason to depart from that conclusion.[2] Indeed, "several" Federal Circuit precedents have

---

[2]    While Claim 1 may be more specific than the claim language at issue in U.S. Patent No. 8,668,592, any additional specificity has not led to an improvement in *computer*

determined that similar "methods of providing particularized information to individuals based on their locations" is abstract. *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024). Thus, Claim 1 is abstract.

IAR's attempts to avoid the same outcome for the remaining Patents-In-Suit are unavailing. *First*, while IAR contends that Claim 1 is directed to a "technical solution to the technological problem of incorporating a player's real-world location and its local elements into virtual gameplay," (D.I. 125 at 5), it never identifies an alleged *technological* problem. Rather than focus on improving computer functionality or providing a solution for a technological problem, the specification laments that "virtual worlds" (not computers) "lacked the ability to take the player's location and its various local elements into account" and touts that the invention will allow for "a richer and more unique gameplay experience for each player." (D.I. 21-4 at 1:43-44, 46-47.) But "'improving a user's experience while using a computer application is not, without more, sufficient to render the claims' patent-eligible at step one." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (quotation omitted).

Even if IAR identified the alleged technological problem that Claim 1 purports to solve, I am not convinced that integrating information about real world locations into a virtual world is a unique technological problem in any event. "The concept of building

---

functionality. And an improvement to the abstract idea itself does not make it patent eligible.

models of real-world locations, and integrating the user's location into said models, long predates computers." *Barbaro Techs., LLC v. Niantic, Inc.*, 475 F. Supp. 3d 1007, 1014 (N.D. Cal. 2020). And in this instance, Claim 1 just invokes standard computing devices and other components like location sensors, storage means, and databases as "tool[s] for solving a problem that has predated them[.]" *Id.* In other words, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

*Second*, the "local element script" limitation in Claim 1 is not talismanic language that transforms an otherwise abstract idea into a patent-eligible concept. Any computer-based application or software will execute underlying code to operate; that does not render every application or piece of software patent-eligible. *See, e.g.*, *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023). And again, the local element script does not improve how the ***computing device*** functions. Instead, it tailors content in the virtual world by "modifying the virtual character statistics of the player's virtual character and modifying one or more of a virtual character statistic and a plot node of at least one of the other players' virtual characters." (D.I. 21-4 at 16:39-42.)

*Third*, the mere fact that IAR overcame the patent examiner's rejection of Claim 1 on Section 101 grounds does not persuade me that the claim is patent eligible. Indeed, "a patent examiner's consideration of Section 101 issues does not 'in any way shield the

patent's claims from Article III review for patent eligibility.'" *Beteiro*, 104 F.4th at 1359 (quotation omitted).

### 2.     *Alice* **step two: inventive concept**

Having determined that Claim 1 is directed to an abstract idea, I turn to the second step of the *Alice* inquiry, which requires me to "consider the elements of the claims to determine whether they transform the nature of the claim into a patent-eligible application of the abstract idea." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017) (citation omitted). "This is the search for an inventive concept, which is something sufficient to ensure that the claim amounts to significantly more than the abstract idea itself." *Id.* (same). For the claim to survive, "an inventive concept must be **evident in the claims**." (quotation omitted) (emphasis added). In this case, it's not.

In computer-implemented inventions like the Patents-In-Suit, "**the computer** must perform more than 'well-understood, routine, conventional activities previously known to the industry.'" *CosmoKey*, 15 F.4th at 1097 (same). But the claimed computer device in Claim 1 does not. Instead, Claim 1 recites generic computer components performing routine functions—*i.e.*, a "computing device" communicating with other components, providing access to a video game, using a "location sensor" to detect a location, storing that information, creating an executable script, retrieving information from a "database," and actuating the script (or not) in response to other data. Nothing in the claim "requires anything other than conventional computer and network components operating

11

according to their ordinary functions." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted). Even the specification describes known devices, components, and functionality.[3] IAR contends that the specification describes Claim 1's limitations as inventive features, but the record does not support that assertion. Likewise, the ordered combination of these limitations does not represent an inventive concept. Instead, Claim 1 recites a routine ordering of steps— gathering, storing, creating, and using information to achieve a desired result. In short, if Claim 1 contains an inventive concept, it is not evident in the claim language.

IAR's arguments to the contrary are unpersuasive. Where neither the language of Claim 1 nor the specification makes evident that the claims contain an inventive concept, IAR must rely on extrinsic evidence outside the pleadings.[4] But even if I could consider this evidence, or if I were to permit IAR to amend the FAC to include it, it would not make a difference.[5]

---

[3]     *See, e.g.*, D.I. 21-4 at 5:23-32 (identifying many devices known to POSAs where virtual worlds may exist); 9:12-13 ("[D]etermining the player location is a well known method in the art."); 9:18 ("Similarly digital maps have become readily available ….").

[4]     When considering a motion for judgment on the pleadings, I "may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington*, 935 F.3d at 195 (quotation omitted).

[5]     Because my conclusion is that Dr. LaViola's assertion does not change the Section 101 analysis, I will not grant IAR leave to amend the FAC in order to bolster its allegations as they relate to Section 101. In addition, because I am invalidating the Patents-In-Suit, I will deny IAR's Motion For Leave To File A Second Amended And Supplemental Complaint. This will allow IAR the flexibility both to appeal this decision and file a new Complaint as to the two additional patents, if it so chooses.

The declaration from Joseph J. LaViola Jr., Ph.D. sheds no light on whether Claim 1 contains an inventive concept. Only "plausible and **specific factual allegations** that aspects of the claims are inventive are sufficient" to defeat a motion for judgment on the pleadings. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (emphasis added). Dr. LaViola's *ipse dixit* assertion that the "limitations were unconventional and non-routine as of the earliest effective filing date of the Patents-in-Suit (i.e., November 19, 2012)" is a conclusory statement not entitled to a presumption of truth. (D.I. 126-20 at ¶ 25.) Like IAR, he claims that the limitations solve "a technological problem unique to computers," but he never identifies what that problem is or explains how the limitations solve it. (*Id.*)

He also doesn't explain how the ordered combination of limitations solves the purported problem. Instead, he claims that he is "unaware of any technical solution, that was publicly disseminated or available as of the earliest effective filing date of the Patents-in-Suit (i.e., November 19, 2012), that provided the technical ability to incorporate a player's realworld location and its various local elements **into virtual gameplay**." (*Id.* at ¶ 26 (emphasis added).) Notably, Dr. LaViola couches this statement in terms of the specific environment at issue, rather than computer technology in general. But "limiting the claim to 'a particular field of use or technological environment'" "does not make an otherwise abstract claim non-abstract." *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 139 F.4th 1332, 1338 (Fed. Cir. 2025) (citations omitted). The Federal Circuit has "found inventive concepts

in cases where the claims have fundamentally changed or improved *how* a computer functions." *United Servs.*, 139 F.4th at 1339 (original emphasis). Neither the '284 Patent nor Dr. LaViola's declaration identifies that type of improvement or otherwise claims that the invention "enables a computer … to do things it could not do before." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018).

IAR's reliance on the '284 Patent's prosecution history is also unavailing. In its attempt to overcome the patent examiner's rejection based on Section 101, the applicant argued that the claims were patent-eligible because they "are related to a new and original type of game with a new mechanic[.]" (D.I. 125 at 15.) But even if this were true, it doesn't turn the abstract concept into something more. "[A] claim for a *new* abstract idea is still an abstract idea. The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (original emphasis). Thus, "even if [C]laim 1 recites novel subject matter, that fact is insufficient by itself to confer eligibility." *Yu*, 1 F.4th at 1045.

## IV.    CONCLUSION

The claims in each of the '284, '797, '827, and '691 Patents are invalid because they are abstract and non-inventive. Thus, Niantic is entitled to judgment on the pleadings. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

April 7, 2026                                              JOSHUA D. WOLSON, J.

14